UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., § § Plaintiff, § VS. § § GERARDO ARCELLANO CASISON, *et al*, § § § Defendants. § § § | CIVIL ACTION NO. 7:18-CV-323 |

## OPINION & ORDER

The Court now considers the "Motion for Final Default Judgment and Supporting Brief"[1] filed by Joe Hand Promotions, Inc. ("Plaintiff") against Defendants JP Tao, LLC d/b/a Breeze Lounge ("JP Tao, LLC") and Jong Mi Park ("Park") (collectively, "Defendants").[2] Defendants have not responded and the time for doing so has passed. After duly considering the record and relevant authorities, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

### I. BACKGROUND

Plaintiff brings this suit under the Federal Communications Act of 1934[3] ("Communications Act") against Defendants for two separate broadcasts at Defendants' establishment, Breeze Lounge.[4] Plaintiff alleges it held the exclusive right to broadcast *Ultimate Fighting Championship® 193: Rousey vs. Holm* ("UFC Program") on November 14, 2015, and the exclusive right to broadcast *Miguel Cotto vs. Canelo Alvarez* ("Boxing Program") on

---

[1] Dkt. No. 19.
[2] Upon Plaintiff's motion, the Court dismissed with prejudice Gerardo Arcellano Casison as a defendant on March 5, 2019. Dkt. No. 16.
[3] *See* 47 U.S.C. §§ 553, 605.
[4] Dkt. No. 1.

November 21, 2015.[5] Plaintiff alleges Defendants broadcast the UFC Program and Boxing Program at Breeze Lounge on the respective dates without paying sublicense fees to Plaintiff in violation of the Communications Act.[6]

Though properly served,[7] Defendants did not appear or respond. Accordingly, Plaintiff sought entry of default,[8] which was entered by the Clerk of Court.[9] Plaintiff subsequently filed the instant motion for default judgment.[10] Plaintiff pled its complaint in the alternative under both 47 U.S.C. § 553 and § 605.[11] In the instant motion, Plaintiff seeks a default judgment and statutory damages under only § 605.[12] Again, neither JP Tao, LLC nor Park have responded to the motion, rendering the motion unopposed by operation of the Local Rules.[13] The Court now turns to its analysis.

## II. LEGAL STANDARD

Obtaining a default judgment is a three-step process: (1) default by the defendant; (2) entry of default by the Clerk of Court; and (3) entry of a default judgment.[14] Here, Defendants have defaulted by failing to answer or otherwise appear in this case. Entry of default has already been made against them.[15] The only remaining question is whether the third step—actual entry of default judgment—is appropriate.

---

[5] *Id.* at p. 1.
[6] *Id.* at p. 4.
[7] JP Tao, LLC was served with process on November 23, 2018 by registered agent Irene Mireles. Dkt. No. 5. Park was served with process on December 10, 2018. Dkt. No. 7.
[8] Dkt. No. 13.
[9] Dkt. Nos. 16–18. The Clerk of Court sent Defendants JP Tao, LLC and Park the entry of default documentation on March 5, 2019. Entry dated March 5, 2019.
[10] Dkt. No. 19.
[11] Dkt. No. 1 p. 4.
[12] Dkt. No. 19 p. 8, ¶ 18.
[13] L.R. 7.2–7.4 of the United States District Court of the Southern District of Texas.
[14] *Bieler v. HP Debt Exch., LLC*, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)).
[15] Dkt. No. 11.

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes entry of default judgment with court approval. It is a drastic remedy, resorted to only in extreme situations.[16] Nevertheless, default judgment determinations are left to the sound discretion of the district court.[17] Determining the propriety of default judgment is itself a three-step process.

First, the Court must determine if default judgment is procedurally proper, countenancing six factors:

> (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion.[18]

Second, if default judgment is procedurally proper, the Court must determine whether the plaintiff's claims are substantively meritorious.[19] After all, a defendant's failure to answer or otherwise defend does not mean the particular legal claims levied against him are valid.[20] When analyzing the merits of a claim, courts may assume the truth of all well-pled allegations in the plaintiff's complaint.[21]

Third, if the plaintiff's claims are meritorious, the Court must determine whether the requested relief is appropriate.[22] In particular, Rule 54(c) dictates that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[23]

If the court determines default judgment is appropriate, it must determine how to calculate damages. The general rule is "unliquidated damages normally are not awarded without

---

[16] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).
[17] *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).
[18] *Bieler*, 2013 WL 3283722, at *2 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).
[19] *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[20] *Id.*
[21] *Id.*
[22] *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).
[23] Fed. R. Civ. P. 54(c).

an evidentiary hearing."[24] However, there is an exception when the amount claimed is "one capable of mathematical calculation."[25] When this exception applies, there is no need for an evidentiary hearing, and the court can enter default judgment on the briefing.

### III. LEGAL ANALYSIS

As noted above, Plaintiff bases its Communications Act suit on the broadcast of two separate programs. Because the programs are unrelated and independently require evidence, the Court separately considers Plaintiff's claim based in the broadcast of the UFC Program ("UFC claim") and Plaintiff's claim based in the broadcast of the Boxing Program (Boxing claim"). The Court begins with determining whether default judgment as to Plaintiff's UFC claim and Boxing claim is procedurally proper.

#### A. Procedural Properness

##### i. UFC Claim

Plaintiff shows default judgment is procedurally proper for its UFC claim because the record does not reveal any material fact issues for Plaintiff's UFC claim. Further, the grounds for default are clearly established—Defendants have not answered or appeared. There is no indication in the record that these failures were somehow made in good faith or otherwise excusable, and for that reason, there is no basis for the Court to believe it would be obligated, upon motion, to vacate default judgment against Defendants as to Plaintiff's UFC claim. Due to Defendants' failure to answer or otherwise appear, default judgment cannot—procedurally speaking—be properly characterized as unduly harsh or prejudicial. For these reasons, default judgment as to Plaintiff's UFC claim is procedurally proper against Defendants. The Court now must determine whether Plaintiff's Boxing claim is substantively meritorious.

---

[24] *Leedo Cabinetry v. James Sales & Distribution, Inc.*, 157 F.3d 410, 414 (5th Cir. 1998).
[25] *Id.* (citing *James v. Frame*, 6 F.3d 307, 309–10 (5th Cir. 1993)).

## ii. Boxing Claim

Plaintiff fails to show default judgment is procedurally proper for its Boxing claim because the record reveals a material issue of fact. Plaintiff alleges in its complaint the Boxing Program displayed by Defendants at their establishment, Breeze Lounge, on November 21, 2015, was *Miguel Cotto vs. Canelo Alvarez*. Yet, Plaintiff presents evidence indicating Defendants displayed a program different than the Boxing Program on November 21, 2015.

Plaintiff specifically hired eyewitness Matthew Schlieper ("Auditor Schlieper") to observe whether Breeze Lounge broadcast the Boxing Program on November 21, 2015. In its motion, Plaintiff alleges as "undisputed fact" that Auditor Schlieper "on the night of the Boxing Program[26] . . . observed the Boxing Program being broadcast on 5 televisions, counting approximately 40 people in the Establishment at that time."[27] On the contrary, the evidence shows Auditor Schlieper did not see the Boxing Program, *Miguel Cotto vs. Canelo Alvarez*. Auditor Schlieper signed an affidavit on November 25, 2015, attesting that while at Breeze Lounge on November 21, 2015, he "observed Guillermo Rigondeaux wearing (green/white trunks) and Drian Francisco wearing (yellow/white trunks) fighting the 6th round."[28] The Court cannot construe Guillermo Rigondeaux or Drian Francisco as Miguel Cotto or Canelo Alvarez. Thus, Auditor Schlieper's affidavit directly contradicts Plaintiff's Boxing claim.

Auditor Schlieper's attached blurry photographs further cannot confirm the identities of the boxers.[29] Auditor Schlieper's screenshots of Breeze Lounge's social media advertisement of *Miguel Cotto vs. Canelo Alvarez* on November 21, 2015 are similarly insufficient to show

---

[26] The Boxing Program is defined in the motion as the *Miguel Cotto vs. Canelo Alvarez* broadcast.
[27] Dkt. No. 19 p. 6, ¶ 11(i).
[28] Dkt. No. 19-7 p. 1.
[29] *Id.* at pp. 9–11.

Defendants displayed *Miguel Cotto vs. Canelo Alvarez* on November 21, 2015.[30] In sum, Auditor Schlieper's eyewitness account fails to verify Plaintiff's claim that Defendants displayed the Boxing Program on November 21, 2015.

Although Plaintiff shows Defendants conducted business at Breeze Lounge on November 21, 2015;[31] advertised the Boxing Program, implying Breeze Lounge was showing the Boxing Program on November 21, 2015;[32] and did not contract with Plaintiff to exhibit the Boxing Program; Plaintiff provides no definitive evidence Defendants received, assisted in receiving, transmitted, or assisted in transmitting the Boxing Program or published the existence, contents, substance, purport, effect, or meaning thereof, as required under the relevant statute.[33] Thus, a material issue of fact exists as to whether Defendants displayed the Boxing Program as statutorily required to violate the Communications Act. For this reason, Plaintiff fails to show default judgment is procedurally proper for its Boxing claim.

The Court **DENIES WITH PREJUDICE** Plaintiff's motion for default judgment as to Plaintiff's Boxing claim. The Court excludes Plaintiff's Boxing claim from the following analysis, and now determines whether Plaintiff's UFC claim is substantially meritorious.

### B.     Substantially Meritorious

Plaintiff's complaint alleges Defendants violated 47 U.S.C. § 605, which applies to the receipt of communications through the air via radio, such as satellite communications.[34] Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio

---

[30] *Id.* at p. 12.
[31] *See* Dkt. No. 1; Dkt. No. 19-1 (Texas state records indicating JP Tao, LLC owned and was licensed to operate Breeze Lounge on the dates at issue). Park, who is listed as Manager on the Texas state records, does not contest conducting business on November 21, 2015.
[32] Dkt. No. 19-8 (Declaration of Ryan R. Janis, an attorney with Jekielek & Janis, LLP, Plaintiff's retained counsel, citing attached screenshots from Breeze Lounge's social media); Dkt. No. 19-9 (screenshots of Breeze Lounge's Facebook page).
[33] 47 U.S.C. § 605.
[34] *See* Dkt. No. 1; *J&J Sports Prods., Inc. v. Mandell Fam. Ventures, L.L.C.*, 751 F.3d 346, 350-53 (5th Cir. 2014) (distinguishing § 605 from § 553).

communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."[35] Section 605, as well as § 553, are intended to provide for criminal and civil penalties and remedies to "protect the revenue of television cable companies from unauthorized reception of their transmissions."[36] To recover for a violation under § 605 of the Communications Act, a plaintiff must prove that a defendant, without authorization, intercepted or otherwise unlawfully appropriated a radio communication and published it to any person.[37]

Here, the Court finds, based on the well-pleaded allegations in Plaintiff's complaint and the evidence provided in the motion for default judgment, Plaintiff is entitled to relief requested for Plaintiff's UFC claim. Defendants' default serves as an admission of well-pleaded facts,[38] and Plaintiff has additionally attached evidence in support of its allegations.[39]

Plaintiff's evidence and the facts as pled in the complaint establish that Plaintiff is in the business of distributing and licensing premier sporting events to commercial locations, and Plaintiff alone possessed the exclusive rights to distribute and license the UFC Program on November 14, 2015.[40] In order to safeguard against unauthorized receipt of the UFC Program, Plaintiff attests the interstate satellite transmissions were electronically coded and neither available nor intended for public use on the dates at issue.[41] Thus, in Texas, only commercial establishments authorized by Plaintiff via contract could exhibit the UFC Program.[42]

---

[35] 47 U.S.C. § 605.
[36] *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001) (quotations omitted).
[37] *See* 47 U.S.C. § 605; *Mandell Family*, 751 F.3d at 352–53.
[38] *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[39] *See* Dkt. Nos. 19-1–19-11.
[40] Dkt. No. 1; Dkt. No. 19-2 p. 2, ¶ 4 (Affidavit of Joe Hand, Jr., president of Plaintiff's company); Dkt. No. 19-3 (Copy of Distributorship Agreement).
[41] Dkt. No. 19-2 p. 5, ¶ 12.
[42] Dkt. No. 1; Dkt. No. 19 p. 1.

Plaintiff shows Defendants conducted business at their establishment, Breeze Lounge, on the date of the UFC Program, November 14, 2015, and did not contract with Plaintiff to exhibit the UFC Program.[43] Plaintiff hired eyewitness Crystal Miller ("Auditor Miller"), who provided an affidavit attesting that on November 14, 2015, Breeze Lounge displayed a UFC fight on five televisions and one projector.[44] Auditor Miller confirmed the UFC fight showing was the UFC Program, stating "the UFC 193 main event fight of Rhonda Rousey vs. Holly Holm. Holm was in the white trunks and Rousey was in the black trunks . . ."[45] Thus, Plaintiff's UFC claim is substantially meritorious.

Finally, Plaintiff provides evidence Defendants could not have "mistakenly, innocently, or accidentally intercepted" the UFC Program because the UFC Program interstate satellite transmissions were "scrambled."[46] Thus, to broadcast the UFC Program, Defendants must have done some wrongful action, such as using an unauthorized decoder or illegally altering a cable or satellite service.[47] Plaintiff has established Defendants, without authorization, intercepted or otherwise unlawfully appropriated the UFC Program and published it to the patrons at Breeze Lounge sufficient to establish a violation of the Communications Act.[48] Accordingly, all the elements of a claim under 47 U.S.C. § 605 are met, rendering Plaintiff's UFC claim substantively meritorious. The Court now determines the relief to which Plaintiff is entitled.

### C. Requested Relief

As a threshold matter, because the Court denied with prejudice Plaintiff's motion for default judgment for Plaintiff's Boxing claim, the Court will not address Plaintiff's request for

---

[43] *See* Dkt. No. 1; Dkt. No. 19-1 (Texas state records indicating JP Tao, LLC owned and was licensed to operate Breeze Lounge on the dates at issue). Park, who is listed as Manager on the Texas state records, does not contest conducting business on November 14, 2015.
[44] Dkt. No. 19-6 (Affidavit of Auditor Miller).
[45] *Id.* at p. 1.
[46] Dkt. No. 19-2 p. 5, ¶ 12.
[47] *Id.*
[48] *See* 47 U.S.C. § 605; *Mandell Family*, 751 F.3d at 352–53.

statutory damages or additional statutory damages for Plaintiff's Boxing claim. Accordingly, the Court addresses the statutory damages and additional statutory damages, if any, only as to Plaintiff's UFC claim.

In lieu of actual damages, Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $10,000.00,[49] and additional damages for Defendants' willful violation in the amount of $50,000.00.[50] Plaintiff also requests attorney's fees in the amount of $1,900.00 and costs in the amount of $910.00.[51]

Plaintiff argues the unauthorized broadcast of the UFC Program deprived it of the UFC Program's derived "value, benefits and profits."[52] Plaintiff further argues it has been deprived of the "value of business investment, business opportunities, reputation, and goodwill," and continues to suffers ongoing losses resulting in incalculable damages.[53] Finally, Plaintiff argues Defendants willfully violated § 605 because the UFC Program could not have been accidentally displayed, and thus significant additional damages should be utilized to deter future similar violations.[54]

Section 605(e) provides for damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ."[55] Under the statute, a private party, such as Plaintiff, may recover either its actual damages or statutory damages, as well as full costs and reasonable

---

[49] Dkt. No. 19 p. 9, ¶¶ 20–21; *see* 47 U.S.C. § 605(e)(3)(C)(i)(II).
[50] Dkt. No. 19 p. 17, ¶ 42.
[51] *Id.* at p. 17, ¶¶ 43–44; Dkt. No. 19-10 (Affidavit of Jamie King of Jamie King, P.C., Plaintiff's retained counsel, detailing attorney's fee amounts and calculations).
[52] Dkt. No. 19 p. 12, ¶ 29.
[53] *Id.* ¶¶ 29–30.
[54] *Id.* at pp. 14–16.
[55] 47 U.S.C. § 605(e)(3)(C)(i)(II); *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. App'x 444, 445 (5th Cir. 2013) (affirming an award of statutory damages and attorney's fees for a violation of § 605).

attorney's fees.[56] Additionally, if the court finds defendants acted willfully and for the purpose of private financial gain, the court may increase the damages by no more than $100,000.[57]

Here, the Court finds statutory damages in the amount of $4,000.00 appropriate. As noted above, Plaintiff shows default judgment is procedurally proper for its UFC claim and meets its burden of establishing such claim is substantially meritorious. Plaintiff produces evidence that it would have charged an establishment with 150-person capacity, such as Breeze Lounge, $1,200.00 to legally broadcast the UFC Program.[58] In addition, Plaintiff indicates Defendants displayed the UFC Program to approximately 90 individuals and specifically advertised the UFC Program via social media.[59] Thus, while, the Court finds the circumstances do not warrant the entire statutorily authorized amount, the Court finds an additional $2,800.00 is reasonable for statutory damages to deter future violations.[60] Thus, the Court **GRANTS** Plaintiff $4,000.00 in statutory damages.

The Court also finds the circumstances warrant additional damages because Defendants acted willfully and for the purposes of private financial gain in receiving the unauthorized satellite signal and broadcasting the UFC Program. The Court finds appropriate awarding

---

[56] *See* 47 U.S.C. § 605(e)(3); *J&J Sports Prods. v. 3705 Iberville LLC*, No. 17-4316, 2018 U.S. Dist. LEXIS 179201, at *9 (E.D. La. Oct. 18, 2018).
[57] 47 § 605(e)(3)(C)(ii).
[58] Dkt. No. 19 p. 6, ¶ 11(g); Dkt. No. 19-2 p. 3, ¶¶ 8–9 (Affidavit of Joe Hand, stating the commercial sublicense fee for the UFC Program would have been $1,200.00); Dkt. No. 19-4 (Rate Card for UFC Program); Dkt. No. 19-6 (Auditor Miller's affidavit stating Breeze Lounge's 150-person capacity).
[59] Dkt. No. 19-6 (Auditor Miller's affidavit explaining his observations); Dkt. No. 19-8 (Declaration of Ryan R. Janis, citing attached screenshots from Breeze Lounge's social media); Dkt. No. 19-9 (screenshots of Breeze Lounge's Facebook page).
[60] *See e.g., Joe Hand Promotions, Inc. v. Izalco, Inc*., No. H-16-3696, 2018 U.S. Dist. LEXIS 1428, at *6 (S.D. Tex. Jan. 4, 2018) (awarding $3,800.00 to deter future violations of § 605); *J&J Sports Prods. v. Little Napoli, Inc*., No. H-13-1237, 2014 U.S. Dist. LEXIS 99032, at *8 (S.D. Tex. July 22, 2014) (same).

additional statutory damages equivalent to double the statutory damages.[61] Therefore, the Court **GRANTS** Plaintiff $8,000.00 in additional statutory damages.

Finally, due to their liability under § 605, Defendants must also compensate Plaintiff for reasonable attorney's fees and costs.[62] Plaintiff seeks attorney's fees in the amount of $1,900.00 for 7.60 hours of work on this case at $250.00 per hour, and costs in the amount of $910.00, accounting for filing fees and costs to execute service of process.[63] The Court finds these requests reasonable.

In this District, an hourly rate of $250.00 is reasonable,[64] and in turn, Plaintiff's attorney's hours worked and the costs provided are reasonable. Additionally, although Plaintiff does not specifically request for such, Plaintiff's attorney requests in her affidavit conditional attorney's fees "in the event of the need for post-trial and appellate services."[65] The Court also finds this request reasonable.

Therefore, the Court **AWARDS** Plaintiff $1,900.00 in attorney's fees and $910.00 in costs for a total of $2,810.00, and conditional fees as follows: $2,500.00 for the collection of judgment in the event Plaintiff obtains a writ of execution, writ of garnishment, writ of attachment, or other process; $5,000.00 in the event Defendants file a post-judgment motion or

---

[61] *See Joe Hand Promotions, Inc. v. Chios, Inc.*, No. 4:11-CV-2411, 2012 U.S. Dist. LEXIS 104979, 2012 WL 3069935, at *5 (S.D. Tex. July 27, 2012) ("Generally, it is reasonable to increase an actual or statutory damages award by a multiplier to penalize defendants for willful acts."), aff'd, 544 F. App'x 444 (5th Cir. 2013) (per curiam).
[62] *Id.* § 605(e)(3)(B)(iii).
[63] Dkt. No. 19-10 (Affidavit of Jamie King).
[64] *See* State Bar of Texas 2015 Hourly Rate Fact Sheet, 12 (2016) https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182 (providing $258 as the median hourly fee for a lawyer with 11-15 years of experience in 2015, and basing years of experience on year first licensed in any jurisdiction). Plaintiff's counsel, Jamie King, represents she has 15 years of experience. Thus, Plaintiff's requested attorney's fees are reasonable.
[65] Dkt. No. 19-10 p. 3, ¶ 7.

pre-appeal motion upon which Plaintiff prevails; and **$15,000.00** in the event Defendants file an appeal to the Fifth Circuit Court of Appeals upon which Plaintiff prevails.[66]

In sum, the Court finds Plaintiff is entitled to the relief requested for its UFC claim, totaling **$14,810.00** in damages, attorney's fees, and costs. Plaintiff's attorney is also entitled to conditional fees, outlined above, as necessary.

### IV. HOLDING

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for default judgment[67] against Defendants JP Tao, LLC d/b/a Breeze Lounge and Jong Mi Park. Accordingly, the Court **DENIES WITH PREJUDICE** Plaintiff's motion for default judgment as to Plaintiff's Boxing claim. The Court **GRANTS** Plaintiff a total **$14,810.00** in damages, attorney's fees, and costs for its UFC claim. Specifically, Plaintiff is entitled to **$4,000.00** in statutory damages; **$8,000.00** in additional statutory damages for Defendants' willful violation; and **$2,810.00** in attorney's fees and costs. As necessary, Plaintiff is entitled to conditional fees consistent with this Order only as to Plaintiff's UFC claim. Because no other claims or causes of action exist, a final judgment will issue separately pursuant to Rule 58.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 11th day of July, 2019.

_____
Micaela Alvarez
United States District Judge

---

[66] *Id.*
[67] Dkt. No. 19.